**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| MATTHEW STRAUBMULLER, individually and on behalf of all others similarly situated, | : : : : | |
| Plaintiff, | : : | Civil Action No. 8:23-cv-00384-DKC |
| v. | : : | |
| JETBLUE AIRWAYS CORPORATION, | : : | |
| Defendant. | : : : | |

**DEFENDANT JETBLUE AIRWAYS CORPORATION'S
MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS COMPLAINT</u>**

**TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................... 4

    A.    JetBlue's Disclosures On The Jetblue.com Website.................................. 4
    B.    Plaintiff Matthew Straubmuller's Interactions With The Website And His Claims. ....................................................................................................... 5

III.  THIS COURT LACKS PERSONAL JURISDICTION OVER JETBLUE ...................... 6

    A.    Standard for Motions to Dismiss Pursuant to Rule 12(b)(2). ................ 6
    B.    The Court Does Not Have Specific Jurisdiction Over JetBlue. .............. 6

IV.   PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT .................. 10

    A.    Constitutional Requirements For Standing. ......................................... 10
    B.    Plaintiff Has Not Alleged A Concrete Harm. ...................................... 11

V.    PLAINTIFF HAS FAILED TO STATE A CLAIM .......................................... 13

    A.    Standard For Ruling On Motions To Dismiss Pursuant To Rule 12(b)(6). .......... 13
    B.    Plaintiff's Claims Against JetBlue Are Preempted By The ADA. ...................... 14
    C.    Plaintiff Fails To Allege A Plausible Violation Of MWESA. .............................. 17

        1.    Session Replay Software Falls Under MWESA's "Telephone "Exemption". ...................................................................................... 17
        2.    Plaintiff Does Not Allege that JetBlue Captured the "Contents" of His Communications................................................................................. 19
        3.    Plaintiff Has Not Alleged That His Communications Were Intercepted Contemporaneously With Transmission............................... 21

    D.    Plaintiff Fails To Plausibly Allege Intrusion Upon Seclusion............................ 22
    E.    Plaintiff Consented to JetBlue's Recording. ...................................................... 24

VI.   CONCLUSION....................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

### Federal Cases

*A Soc'y Without a Name v. Virginia*,
655 F.3d 342 (4th Cir. 2011) .................................................................................13

*Air Evac EMS, Inc. v. Cheatham*,
910 F.3d 751 (4th Cir. 2018) .................................................................................14

*ALS Scan, Inc. v. Digital Service Consultants*,
293 F.3d 707 (4th Cir. 2002) .............................................................................6, 7

*In re Am. Airlines, Inc., Privacy Litig.*,
370 F. Supp. 2d 552 (N.D. Tex. 2005) .............................................................15, 17

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995)...............................................................................................15

*Andreadakis v. Ctr. for Disease Control & Prevention*,
No. 3:22CV52 (DJN), 2022 WL 2674194 (E.D. Va. July 11, 2022) ......................14

*Antman v. Uber Techs., Inc.*,
No. 3:15-CV-01175-LB, 2015 WL 6123054 (N.D. Cal. Oct. 19, 2015)................11

*Asabre v. Retail Servs. & Sys., Inc.*,
No. PWG-22-148, 2022 WL 4326536 (D. Md. Sept. 19, 2022)............................10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................13, 23

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) .............................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................13

*Calder v. Jones*,
465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)........................................8, 9

*Carefirst of Maryland Inc. v. Carefirst Pregnancy Centers, Inc.*,
334 F.3d 390 (4th Cir. 2003) ..........................................................................2, 6, 7, 9

*Charter Oak Fire Ins. Co. v. Hearty Pet, Inc.*,
No. 22-CV-02290, 2023 WL 170426 (D. Md. Jan. 12, 2023)..........................13, 19

*Chavakula v. Christian Heritage Broad., Inc.*,
No. CV TDC-21-3295, 2023 WL 2307367 (D. Md. Feb. 28, 2023) ......................7

*Cleaning Auth., Inc. v. Neubert*,
739 F. Supp. 2d 807 (D. Md. 2010) .......................................................................8

*Copeland v. Nw. Airlines Corp.*,
No. 04-2156 M1/V, 2005 WL 2365255 (W.D. Tenn. Feb. 28, 2005)....................16

*Dreher v. Experian Info. Sols., Inc.*,
856 F.3d 337 (4th Cir. 2017) ...................................................................................11

*ESAB Grp., Inc. v. Centricut, Inc.*,
126 F.3d 617 (4th Cir. 1997) .....................................................................................9

*Fletcher v. Price Chopper Foods of Trumann, Inc.*,
220 F.3d 871 (8th Cir. 2000) ...................................................................................23

*Fraser v. Nationwide Mut. Ins. Co.*,
352 F.3d 107 (3d Cir. 2003), *as amended* (Jan. 20, 2004)......................................21

*Frazier v. Experian Info. Sols., Inc.*,
No. CV GLR-18-0068, 2019 WL 13247929 (D. Md. July 25, 2019) ...............10, 11

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) ...............................................................20, 24

*Goldstein v. Luxottica of Am., Inc.*,
No. 21-CV-80546, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ..........................20

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .....................................................................20

*Harris v. Wells Fargo Corp. Office Headquarters*,
No. 22-CV-00580, 2023 WL 155244 (D. Md. Jan. 11, 2023)..................................13

*James v. Synovus Bank*,
No. 19-CV-1137, 2020 WL 1479115 (D. Md. Mar. 26, 2020) ................................26

*In re Jetblue Airways Corp. Priv. Litig.*,
379 F. Supp. 2d 299 (E.D.N.Y. 2005) .......................................................................2

*Johnson v. Blue Nile, Inc.*,
No. 20-CV-08183, 2021 WL 1312771 (N.D. Cal. Apr. 8, 2021)............................20

*Kislov v. Am. Airlines, Inc.*,
No. 17 C 9080, 2022 WL 846840 (N.D. Ill. Mar. 22, 2022) .............................15, 16

*Kumar v. Mahone*,
No. CV GLR-21-735, 2022 WL 279798 (D. Md. Jan. 31, 2022)............................12

*Lewis v. Willough at Naples*,
311 F. Supp. 3d 731, 738 (D. Md. 2018)...................................................................9

*Lindsay-Stern v. Garamszegi*,
No. SACV 14-01970-CJC(DFMx), 2016 WL 11745948 (C.D. Cal. Oct. 13,
2016) ........................................................................................................................22

*Makkinje v. Extra Space Storage, Inc.*,
No. 21-CV-80546, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021) ...........................20

*Marrs v. Marriott Corp.*,
830 F. Supp. 274 (D. Md. 1992)...............................................................................22

*Maryland v. Macon*,
472 U.S. 463 (1985)..................................................................................................24

*Masselli & Lane, PC v. Miller & Schuh, PA*,
No. 99-2440, 2000 WL 691100 (4th Cir. May 30, 2000).......................................................6

*Massie v. Gen. Motors LLC*,
CV 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) ...........................................12

*McGarry v. Delta Air Lines, Inc.*,
No. CV 18-9827-MWF (Ex), 2019 WL 2558199 (C.D. Cal. June 18, 2019),
*aff'd,* 812 F. App'x 625 (9th Cir. 2020)..................................................................16

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992)................................................................................14, 15

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016).........................................................................4

*Northwest, Inc. v. Ginsberg*,
134 S.Ct. 1422 (2014)..............................................................................14

*In re Nw. Airlines Priv. Litig.*,
No. CIV.04-126(PAM/JSM), 2004 WL 1278459 (D. Minn. June 6, 2004)..........................16

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) ........................................................................8

*Pena v. Brit. Airways, PLC (UK)*,
No. 18 CV 6278 (LDH) (RML), 2020 WL 3989055 (E.D.N.Y. Mar. 30,
2020), *aff'd*, 849 F. App'x 13 (2d Cir. 2021) .......................................................16

*Pica v. Delta Air Lines, Inc.*,
No. CV 18-2876-MWF (Ex), 2019 WL 1598761 (C.D. Cal. Feb. 14, 2019),
*aff'd*, 812 F. App'x 591 (9th Cir. 2020)..............................................................16

*Pruitt v. Resurgent Cap. Servs.*,
No. CV JKB-21-2615, 2022 WL 2530408 (D. Md. July 7, 2022) ......................................12

*Quigley v. Yelp, Inc.*,
No. 17-CV-03771, 2018 WL 7204066 (N.D. Cal. 2018) ..............................................22

*Richmond, Fredericksburg & Potomac R.R. Co. v. United States*,
945 F.2d 765 (4th Cir. 1991) ........................................................................11

*Rodriguez v. Google LLC*,
No. 20-CV-04688, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022).......................................21

*Rosenow v. Facebook, Inc.*,
No. 19-CV-1297, 2020 WL 1984062 (S.D. Cal. 2020)................................................22

*Rullan v. Goden*,
No. 12-CV-2412, 2014 WL 4926192 (D. Md. Sept. 30, 2014)........................................24

*Sec'y of State for Defence v. Trimble Navigation Ltd.*,
484 F.3d 700 (4th Cir. 2007) ........................................................................13

*Shafer v. Warden*,
No. 21-CV-3052, 2023 WL 185517 (D. Md. Jan. 13, 2023)...........................................13

iv

*Shamsuddin v. Vitamin Research Products*,
   346 F. Supp. 2d 804 (D. Md. 2004) ..............................................................................9

*Smith v. Comair, Inc.*,
   134 F.3d 254 (4th Cir. 1998) ......................................................................................15

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ................................................................................................10

*Stamat v. Grandizio Wilkins Little & Matthews, LLP*,
   No. CV SAG-22-00747, 2022 WL 3919685 (D. Md. Aug. 31, 2022) ........................12

*Stoddard v. Subaru of Am., Inc.*,
   No. CV PWG-20-2164, 2021 WL 3472129 (D. Md. Aug. 6, 2021) .......................8, 9

*Swiggum v. EAN Servs., LLC*,
   2021 WL 3022735 (M.D. Fla. Jul 16, 2021) ..............................................................20

*Ticketmaster-New York, Inc. v. Alioto*,
   26 F.3d 201 (1st Cir. 1994) ..........................................................................................6

*Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*,
   682 F.3d 292 (4th Cir. 2012) ........................................................................................6

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .............................................................................................2, 10

*Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*,
   73 F.3d 1423 (7th Cir. 1996) ......................................................................................16

*Universal Leather, LLC v. Koro AR, S.A.*,
   773 F.3d 553 (4th Cir. 2014) .....................................................................................5, 6

*Veney v. Wyche*,
   293 F.3d 726 (4th Cir. 2002) ......................................................................................14

*Walden v. Fiore*,
   571 U.S. 277 (2014) .......................................................................................................6

*Washington v. Glob. Tel\*Link Corp.*,
   No. 20-CV-01932, 2022 WL 3647782 (D. Md. Aug. 24, 2022) .................................24

*Whitmore v. Arkansas*,
   495 U.S. 149 (1990) .....................................................................................................10

*Whye v. Concentra Health Servs., Inc.*,
   No. 12-CV-3432, 2013 WL 5375167 (D. Md. Sept. 24, 2013), *aff'd*, 583 F.
   App'x 159 (4th Cir. 2014) ..............................................................................3, 22, 23, 24

*Wikimedia Found. v. Nat'l Sec. Agency*,
   857 F.3d 193 (4th Cir. 2017) ......................................................................................11

*Woodbury v. Victory Van Lines*,
   286 F. Supp. 3d 685 (D. Md. 2017) .............................................................................23

*Young v. New Haven Advocate*,
   315 F.3d 256, 263 (4th Cir. 2002) ................................................................................8

*Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*,
    952 F. Supp. 1119 (W.D. Pa. 1997).................................................................................7

**State Cases**

*Boston v. State*,
    175 A.3d 836 (Md. App. 2017)........................................................................................25

*Briddell v. State*,
    No. 1220, 2016 WL 4698158 (Md. App. Sept. 7, 2016) ...........................................25

*People ex rel. Harris v. Delta Air Lines, Inc.*,
    247 Cal. App. 4th 884 (2016) ...............................................................................2, 15, 16

*Jacome v. Spirit Airlines Inc.*,
    2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021) .........................................3, 20, 26

*Martin v. State*,
    96 A.3d 765 (Md. App. 2014)....................................................................................3, 21, 22

*Pemberton v. Bethlehem Steel Corp.*,
    502 A.2d 1101 (Md. App. 1986).....................................................................................22

*Schmerling v. Injured Workers' Ins. Fund*,
    795 A.2d 715 (Md. 2002) ...............................................................................17, 18, 19

*Waste Mgmt. of N.J., Inc. v. Mercer Cnty. Imp. Auth.*,
    No. A-2287-12T3, 2014 WL 6390571 (N.J. Super. Ct. App. Div. Nov. 18,
    2014) ...............................................................................................................................23

*Whack v. State*,
    615 A.2d 1226 (Md. App. 1992).....................................................................................25

**Federal Statutes**

18 U.S.C. § 2510(4) ...............................................................................................................21

18 U.S.C. § 2510(8) ...............................................................................................................19

49 U.S.C. § 41713(b)(1) .....................................................................................................2, 14

**State Statutes**

740 ILCS 14/1, *et seq.*...........................................................................................................15

Fed. R. Civ. P. § 12(b)(6)......................................................................................11, 13, 17, 19

Md. Cts. & Jud. Proc. § 10-401(4)......................................................................................3, 19

Md. Cts. & Jud. Proc. § 10-401(8)......................................................................................17

Md. Cts. & Jud. Proc. § 10-401, *et seq.* ............................................................................1, 3, 17

Md. Cts. & Jud. Proc. § 10-402 ........................................................................................17

Md. Cts. & Jud. Proc. § 10-402(c)(3) ................................................................................24

## I.      **INTRODUCTION**

Plaintiff Matthew Straubmuller ("Plaintiff") is attempting to allege privacy claims over information he voluntarily provided on www.jetblue.com after he chose to allow JetBlue Airways Corporation ("JetBlue") to use technology to record his interactions on the website. Plaintiff claims that he visited www.jetblue.com (the "Website") on undisclosed dates, and during those visits, JetBlue used software to collect his "mouse movements, clicks, keystrokes […], URLs of web pages visited, and/or other electronic communications." Compl ¶¶ 1, 45. He claims that JetBlue's collection of these interactions with the use of software provided by FullStory invaded his privacy and constituted an unlawful wiretap in violation of the Maryland Wiretap Act, Md. Cts. & Jud. Proc. § 10-401, *et seq.* ("MWESA"). This is one of *thirteen* cases filed in the last seven months—*nine* of which were filed *before* Plaintiff Straubmuller asserted his claims here—with near *verbatim* identical factual allegations based on a website operator's alleged collection of innocuous information plaintiffs voluntarily provided. Request for Judicial Notice ("RJN"), Exs. 6-16, 18; *see id.* Exs. 6-13, 18 (filed before Straubmuller's claims here). Plaintiff's cut-and-paste pleading underscores the lack of merit to his claims.

But Plaintiff declines to inform the Court that *before* he accessed the Website, he affirmatively allowed JetBlue to place a cookie on his browser to collect the information that he complains JetBlue unlawfully acquired. Upon navigating to the Website, visitors are presented with a pop-up banner that they are *required* to acknowledge before they can use the Website. The banner states: "We value your privacy. We use cookies to provide a user-friendly experience, analyze website traffic and offer you personalized advertising. To learn more about cookies, view our Cookie policy. By clicking 'Accept all cookies', you consent to the use of all cookies, unless you have disabled them." *See* RJN, Ex. 1. Every Website visitor is *required* to click a button to either "Accept all cookies" or "Manage cookies" before the Website becomes accessible. If

1

Plaintiff elected to "Manage cookies," JetBlue's use of FullStory was expressly disclosed to him in a drop-down menu for "Functional Cookies" that Plaintiff had the option to turn off. *Id*. at Ex. 2, Ex. 3. Assuming Plaintiff's claims are true and JetBlue recorded his website interactions with FullStory's software, that occurred because he elected to not turn the recording off. Plaintiff's consent to the recording is a complete bar to his claims, which fail for multiple other reasons set forth below.

**First**, JetBlue is not subject to personal jurisdiction in Maryland. The only connection that Plaintiff alleges between JetBlue and his claims in Pennsylvania is his own unilateral decision to use JetBlue's Website, which is not targeted to Pennsylvania but available around the world. *Carefirst of Maryland Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 400-01 (4th Cir. 2003).

**Second**, Plaintiff has not and cannot establish an Article III injury in fact necessary for him to maintain suit in federal court. A bare procedural violation of MWESA, without any accompanying harm or even loss of privacy, is insufficient. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021).

**Third**, Plaintiff's claims are preempted by the Airline Deregulation Act, 49 U.S.C. § 41713(b)(1) ("ADA"). Preemption under the ADA is broad and extends to any state law claim "having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1). Courts around the country have held that state law privacy claims arising from the information an air carrier collects in the course of providing ticketing and reservation services, as Plaintiff asserts here, are preempted under the ADA. *E.g.*, *People ex rel. Harris v. Delta Air Lines, Inc*., 247 Cal. App. 4th 884 (2016); *In re Jetblue Airways Corp. Priv. Litig.*, 379 F. Supp. 2d 299 (E.D.N.Y. 2005).

**Fourth**, Plaintiff has failed to state a plausible claim under MWESA: (1) session replay software falls under MWESA's "telephone exemption"; (2) Plaintiff fails to allege that the *contents* of his communications were intercepted, as that term is defined in MWESA; and (3) Plaintiff fails to allege that there was any interception *contemporaneous with transmission* of his alleged communications. *See* Md. Cts. & Jud. Proc. § 10-401, *et seq.* The "mouse movements, clicks, keystrokes . . . URLs of web pages visited, and/or other electronic communications," Compl. ¶ 1, that Plaintiff claims JetBlue acquired have been uniformly rejected as non-actionable non-contents because they fail to provide the "substance, purport, or meaning" of a communication. Md. Cts. & Jud. Proc. § 10-401(4); *Jacome v. Spirit Airlines Inc.*, 2021 WL 3087860 (Fla. Cir. Ct. June 17, 2021). Plaintiff not only fails to allege with non-conclusory facts that JetBlue acquired his communications contemporaneously with transmission, but, he concedes that JetBlue acquired communications from a server, which is not an acquisition at the time of transmission as MWESA requires. Compl. ¶¶ 24, 42; *Martin v. State*, 96 A.3d 765, 776 (Md. App. 2014).

**Fifth**, Plaintiff has not alleged a plausible claim for intrusion upon seclusion. He has no expectation of privacy in his communications on the Website. *Whye v. Concentra Health Servs., Inc.*, No. 12-CV-3432, 2013 WL 5375167, at *14 (D. Md. Sept. 24, 2013), *aff'd*, 583 F. App'x 159 (4th Cir. 2014). He also does not allege with facts that JetBlue's alleged acquisition of the non-substantive data alleged in the Complaint would be highly offensive to an ordinary person. *Id.* at *26.

**Finally**, Plaintiff's consent bars his claims. Before Plaintiff could use the Website, he clicked his assent to JetBlue's use of cookies, including the FullStory software from which his claims arise, to record his website interactions as disclosed in its Privacy Policy. *Jacome*, 2021 WL 3087860, at *7.

3

## II.    FACTUAL BACKGROUND

### A.    JetBlue's Disclosures On The Jetblue.com Website.

When a visitor directs his or her web browser to the Website, JetBlue prominently displays a banner in the center of the screen that states:



RJN, Ex. 1.  This banner is displayed in white while the remainder of the Website is greyed-out. *Id*.  A visitor *must* acknowledge the banner—either by clicking "Manage cookies" or "Accept all cookies"—before the visitor can interact with the Website in any way.  *Id*.  If a visitor selects "Manage cookies," the visitor is directed to a screen where he or she may select from a list of cookies that the visitor can turn off or on.  *Compare* RJN, Ex. 2; *see also* RJN, Ex. 6.[1]  Under the heading "Functional Cookies," a drop-down menu expressly informs visitors that JetBlue uses the "FullStory" cookie to "capture . . . customer experience data . . . ." RJN, Ex. 3.  A visitor who elects to "Manage cookies" *must* click a button to "Submit preferences," either opting in or opting out of the use of FullStory, before he or she can proceed to use the Website.  *Id.*

JetBlue's Privacy Policy linked in the banner (and the bottom of every page) informs visitors that JetBlue collects information "about your interactions" through the use of technology, "including information about your browsing and activity behavior," "information you provide

---

[1] "An Internet 'cookie' is a small text file that a web server places on a user's computing device."  *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 268 (3d Cir. 2016).

4

when you . . . book a flight," and "pages viewed [and] information searched for."  RJN, Ex. 17 at 3.

> **B.**    **Plaintiff Matthew Straubmuller's Interactions With the Website and His Claims.**

Plaintiff alleges that he visited the Website from his computer in Maryland.  Compl. ¶ 44. He neither alleges when he visited nor that he made any purchases.  Plaintiff describes session replay software used by JetBlue as code "implemented on www.jetblue.com" that allowed JetBlue to "record, save, and replay website visitors' interactions with a given website", such as "mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, . . . numerous other form[s] of a user's navigation and interaction through the website," and "touches (for mobile browsers), key presses, page navigation, changes to visual elements in the browsers, networks requests, and more."  Compl. ¶¶ 22, 25, 42.

Plaintiff does not describe the contents of any information he allegedly provided on the Website.  *See id*. ¶¶ 45-47.  As an "example" of his claims, Plaintiff provides an unauthenticated screenshot allegedly depicting "information sent to . . . FullStory . . . after looking for flights . . . on [www.Jetblue.com](www.Jetblue.com)"  *Id.* ¶ 48.  Assuming this search information is Plaintiff's—which he does not allege—he does not claim that he did not intend to provide this information to JetBlue or that he did not want JetBlue to use the information to display flight options to him.

Plaintiff claims that JetBlue used software supplied by FullStory to collect his information without his permission, but he does not claim that he opted out of JetBlue's use of FullStory's cookie, as Website visitors have the option to do.  RJN, Ex. 3.

III.    **THIS COURT LACKS PERSONAL JURISDICTION OVER JETBLUE**

   A.    **Standard for Motions to Dismiss Pursuant to Rule 12(b)(2).**

Plaintiff bears the burden of making a prima facie showing that personal jurisdiction exists. *Universal Leather, LLC v. Koro AR, S.A.*, 773 F.3d 553, 558 (4th Cir. 2014). The court may consider affidavits and other documentary evidence to resolve a motion to dismiss based on lack of personal jurisdiction. *Id.* In doing so, the court may disregard "conclusory assertions" of personal jurisdiction. *Carefirst of Maryland Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). *See also Masselli & Lane, PC v. Miller & Schuh, PA*, No. 99-2440, 2000 WL 691100, at *1 (4th Cir. May 30, 2000) (cautioning that in determining personal jurisdiction that "the court need not 'credit conclusory allegations or draw farfetched inferences'" (quoting *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 203 (1st Cir. 1994))).

Personal jurisdiction may be either general or specific. *Universal Leather, LLC*, 773 F.3d at 559. Here, Plaintiff alleges no grounds to find JetBlue, a Delaware corporation with its principal place of business in New York, subject to general jurisdiction in Maryland. Compl. ¶ 6. Personal jurisdiction over JetBlue is only proper, therefore, if Plaintiff can establish that JetBlue is subject to specific jurisdiction in this district, which he has not done and cannot do.

   B.    **The Court Does Not Have Specific Jurisdiction Over JetBlue.**

Courts within the Fourth Circuit "employ a three-part test to determine whether the exercise of specific personal jurisdiction over a nonresident defendant comports with the requirements of due process." *Universal Leather, LLC*, 773 F.3d at 559. The analysis considers "'(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims [arose] out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable.'" *Id.* (quoting *Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 302 (4th Cir. 2012)). The

Supreme Court explained that "the defendant's <u>suit-related</u> conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 286, 290–91 (2014) ("[T]he plaintiff cannot be the only link between the defendant and the forum."). Jurisdictional determinations are based on the defendant's contacts with the forum—not the plaintiff's. *Id*. In *ALS Scan, Inc. v. Digital Service Consultants*, 293 F.3d 707 (4th Cir. 2002), the Fourth Circuit adopted a specific test for personal jurisdiction based on internet-based activities, under which personal jurisdiction exists only if the out-of-state defendant:

> (1) 'directs electronic activity' into the forum State;
>
> (2) 'with the manifested intent of engaging in business or other interactions within the State'; and
>
> (3) 'that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.'

*Chavakula v. Christian Heritage Broad., Inc.*, No. CV TDC-21-3295, 2023 WL 2307367, at *3 (D. Md. Feb. 28, 2023) (quoting *ALS Scan, Inc.*, 293 F.3d 714).

Under this test, which derives from a framework first adopted in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), "the court must consider the nature and quality of the activity conducted over the internet." *Chavakula*, 2023 WL 2307367, at *3 (citing *ALS Scan*, 293 F.3d at 713). "Where users can exchange some information with the website, personal jurisdiction is determined by "examining the level of interactivity and commercial nature of the exchange of information that occurs" on the website. *Id.* When the website occupies this middle ground of a "semi-interactive" website, the defendant must "have acted with manifest intent of targeting Marylanders" in order to establish personal jurisdiction in Maryland. *Carefirst of Maryland Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 400-01 (4th Cir. 2003) (when defendant set up a generally accessible Internet website, "it did not thereby direct electronic

7

activity into Maryland with the manifest intent of engaging in business or other interactions within that state in particular;" it could not, based on its Internet activities, reasonably anticipate being hauled into a Maryland court; and "[c]onsequently, the website fails to furnish a Maryland contact adequate to support personal jurisdiction over [defendant] in the Maryland courts").

Here, Plaintiff cannot establish personal jurisdiction under <u>any</u> of the three *ALS Scan* factors. *Young v. New Haven Advocate* is instructive. 315 F.3d 256, 263 (4th Cir. 2002). There, the Fourth Circuit found "the fact that the [defendants'] websites could be accessed anywhere, including Virginia, does not by itself demonstrate that the [defendants] were intentionally directing their website content to a Virginia audience. Something more than posting and accessibility is needed to 'indicate that the [defendants] purposefully (albeit electronically) directed [their] activity in a substantial way to the forum state,' Virginia." *Id.* (quoting *Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1321 (9th Cir. 1998)). Here, Plaintiff has alleged *nothing* that would indicate any sort of direct targeting towards a Maryland audience. Plaintiff claims that JetBlue's conduct was directed towards Maryland because JetBlue "knew that its practices would directly result in the collection of information from Maryland citizens" while browsing the Website. Compl. ¶¶ 8, 9. But JetBlue's Website from which Plaintiff's claims arise is accessible across the nation (and world). *See Young*, 315 F.3d at 262–63 ("We thus had no trouble in concluding in *ALS Scan* that application of [*Calder v. Jones*, 465 U.S. 783 (1984)] in the Internet context requires proof that the out-of-state defendant's Internet activity is expressly targeted at or directed to the forum state."); *Cleaning Auth., Inc. v. Neubert*, 739 F. Supp. 2d 807, 815 (D. Md. 2010) (court not "satisfied that there are sufficient allegations that the Defendant . . . intended for that intentional tort to impact Plaintiff in Maryland." (citing *Calder*, 465 U.S. 783)).

8

Besides his own unilateral decision to visit the Website "while located in Maryland" (Compl. ¶ 8), Plaintiff "neither alleges nor shows anything to demonstrate that [JetBlue] targeted Maryland in any way . . . ." *Stoddard v. Subaru of Am., Inc.*, No. CV PWG-20-2164, 2021 WL 3472129, at *6 (D. Md. Aug. 6, 2021). In fact, unlike in *Stoddard*, where the plaintiff could point to use of the [defendant's] website" "to complete bookings" for a rental car, *id.*, Plaintiff has alleged nothing of the sort. "Without more, the fact that Stoddard reserved his rental on the Hertz website, which is available throughout the United States, 'without focusing on and targeting' Maryland, does not confer personal jurisdiction over Overland in Maryland." *Id.* (quoting *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997)). Similarly, like the plaintiff in *Lewis v. Willough at Naples*, "Plaintiff has made no specific allegations regarding the commercial nature of his exchange with [JetBlue] through [its] website." 311 F. Supp. 3d 731, 738 (D. Md. 2018). In finding that it lacked personal jurisdiction, the court emphasized that the "interactive capabilities of Defendants' website are not directed at any particular audience, and they certainly are not directed 'into Maryland with the manifest intent of engaging in business or other interactions within that state in particular.'" *Id.* (quoting *Carefirst*, 334 F.3d at 401). "This is simply not sufficiently targeted conduct by Defendants such that they should 'reasonably anticipate being haled into court' in Maryland." *Lewis*, 311 F. Supp. 3d at 738 (quoting *Calder*, 465 U.S. 783); *see also Shamsuddin v. Vitamin Research Products*, 346 F. Supp. 2d 804, 817 (D. Md. 2004) (cautioning against a conclusion that "would mean that [defendant] potentially would be subject to personal jurisdiction in any forum where a resident purchases one or two of [defendant's] products over the Internet…[and] would negate one of the critical functions of the Due Process Clause, which is to ensure the 'orderly administration of the laws' in a federal system").

Plaintiff alleges no connection between JetBlue and Pennsylvania apart from his own visit to JetBlue's nationally-accessible commercial website, which does not establish jurisdiction over JetBlue. *Carefirst*, 334 F.3d at 401; *Lewis*, 311 F. Supp. 3d at 738. His claims must be dismissed for lack of personal jurisdiction.

## IV.   **PLAINTIFF HAS NOT SUFFERED AN ARTICLE III INJURY IN FACT**

### A.   **Constitutional Requirements For Standing.**

To establish "the irreducible constitutional minimum" of standing, plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548.

Under Article III, "an injury in law is not an injury in fact." *Ramirez*, 141 S. Ct. at 2205. "Traditional tangible harms," such as physical and monetary harms, qualify as "concrete" injuries. *Id.* at 2204. So do certain "intangible harms" that have a "close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* But courts may not "loosen Article III based on contemporary, evolving beliefs about what kinds of suits should be heard in federal courts." *Id.* at 2204. An injury in fact must be concrete in "both a qualitative and temporal sense," and must be "distinct and palpable, as opposed to merely abstract." *Beck*, 848 F.3d at 270 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). "Article III grants federal courts the power to redress harms that defendants cause plaintiffs, not a freewheeling power to hold defendants accountable for legal infractions." *Ramirez*, 141 S. Ct. at 2204. *Ramirez* represented a marked departure from prior Supreme Court precedent. In *Ramirez*, the Supreme Court "rejected the proposition that 'a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute

10

grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'"

*Asabre v. Retail Servs. & Sys., Inc.*, No. PWG-22-148, 2022 WL 4326536, at *2 (D. Md. Sept. 19, 2022) (quoting *Ramirez*, 141 S. Ct. 2205); *see Frazier v. Experian Info. Sols., Inc.*, No. CV GLR-18-0068, 2019 WL 13247929, at *3 (D. Md. July 25, 2019) (to determine whether a harm is sufficiently real or concrete, courts consider whether a statutory injury (1) "has a 'common law analogue' (a traditional right to sue)"; (2) "whether 'Congress sought to prevent' the harm alleged;" or (3) "whether the statutory violation caused a harm with a 'real world effect.'") (quoting *Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 346 (4th Cir. 2017)).

### B.      Plaintiff Has Not Alleged A Concrete Harm.

"When an issue of standing is asserted as a basis for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of proof." *Id.* (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768-69 (4th Cir. 1991)).  A challenge to standing may be facial or factual. *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017). In a facial challenge to standing, courts apply the same standard as a motion to dismiss under Rule 12(b)(6), discussed below. *Id.*

Plaintiff's claims arise from JetBlue's alleged use of session replay software to record his interactions and alleged communications on the Website.  Compl. ¶¶ 1, 42, 45.  Plaintiff claims that the recording of his keystrokes, mouse movements and clicks, pages viewed, and information entered online was done without his consent in violation of MWESA and constituted an invasion of his privacy under Maryland common law.  Compl. ¶¶ 63-91.  Plaintiff has alleged at most a bare procedural violation of MWESA, but not any facts that would show his privacy has been injured, which is insufficient under *Ramirez* and *Spokeo*.

Plaintiff contends that the use of session replay could have "expose[d] visitors to identity theft, online scams, and other privacy threats,"  Compl. ¶ 36, but he does not allege that he has personally

11

been put at risk or suffered a privacy threat. *Beck*, 848 F.3d 274-75 (allegation that data breaches created an enhanced risk of future identity theft was too speculative to constitute an injury in fact). Nor does he claim to have provided any information to JetBlue that could lead to identity theft or financial harm. *Antman v. Uber Techs., Inc.*, No. 3:15-CV-01175-LB, 2015 WL 6123054, at \*11 (N.D. Cal. Oct. 19, 2015) (plaintiffs lacked standing based on alleged data breach because data allegedly stolen—names and driver's license numbers—created "no obvious, credible risk of identity theft that risks real, immediate injury"). He does not allege that JetBlue acquired anything personal or private within the common law understanding of a privacy right. *See Kumar v. Mahone*, No. CV GLR-21-735, 2022 WL 279798, at \*8 (D. Md. Jan. 31, 2022) (dismissing claim for intrusion upon seclusion where defendant took photographs that plaintiff printed at a pharmacy because of the "absence of any additional information about the photographs")). Plaintiff does not even allege any personally identifying information that he believes JetBlue unlawfully acquired with session replay software, and he has no expectation of privacy in anonymous data. *See Massie v. Gen. Motors LLC*, CV 21-787-RGA, 2022 WL 534468 (D. Del. Feb. 17, 2022) (holding that the plaintiffs did "not have a reasonable expectation of privacy over *anonymized data* captured by the Session Replay software at issue here," and lacked an Article III injury. (italics added)); Compl. ¶ 1, 45.

Plaintiff's conclusory allegations of harm such as "mental anguish" or lost "economic value," Compl. ¶¶ 87-90, "are pled at too high a level of generality to allow the Court to determine whether [Plaintiff] has carried [his] burden to establish standing." *Pruitt v. Resurgent Cap. Servs.*, LP, No. CV JKB-21-2615, 2022 WL 2530408, at \*5 (D. Md. July 7, 2022) (finding no concrete injury where plaintiff alleged a debt collection letter caused confusion but did "not explain *how* the Letter did so" (italics in original)); *Stamat v. Grandizio Wilkins Little & Matthews, LLP*, No. CV SAG-22-00747, 2022 WL 3919685, at \*7 (D. Md. Aug. 31, 2022) ("[plaintiff] alleges nothing more than similarly bare

12

assertions of emotional harm" where plaintiff alleged "emotional distress and suffered lost time, annoyance, interference, and inconvenience . . . and has anxiety and increased concerns for the loss of his privacy, without alleging any facts to support these assertions." (internal quotations omitted)).

Plaintiff has alleged at most a bare procedural violation, which is insufficient under *Ramirez* and *Spokeo*.

## V.    PLAINTIFF HAS FAILED TO STATE A CLAIM

### A.    Standard For Ruling On Motions To Dismiss Pursuant To Rule 12(b)(6).

"To survive a motion under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain facts sufficient to state a claim to relief that is plausible on its face." *Charter Oak Fire Ins. Co. v. Hearty Pet, Inc.,* No. 22-CV-02290, 2023 WL 170426, at *1 (D. Md. Jan. 12, 2023) (quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This "demands more than bald accusations or mere speculation." *Id.* Thus, "'[a] court decides whether the pleading standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably' infer that the plaintiff is entitled to the legal remedy sought." *Id.* (quoting *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011)). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Harris v. Wells Fargo Corp. Office Headquarters*, No. 22-CV-00580, 2023 WL 155244, at *2 (D. Md. Jan. 11, 2023) (quotation marks omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

The Court can consider matters incorporated by reference in a Complaint and that are subject to judicial notice when ruling on a motion to dismiss pursuant to Rule 12(b)(6). *See, e.g.*, *Shafer v. Warden*, No. 21-CV-3052, 2023 WL 185517, at *3 (D. Md. Jan. 13, 2023) ("The court may 'consider documents attached to the complaint as well as those attached to the motion to

13

dismiss, so long as they are integral to the complaint and authentic.'" (quoting *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007)).  A court is not required to "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002).

## B.  Plaintiff's Claims Against JetBlue Are Preempted By The ADA.

The Airline Deregulation Act includes a broad preemption clause:  "[e]xcept as provided in this subsection, a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart."  49 U.S.C. § 41713(b)(1).  Congress enacted the ADA in 1978 to deregulate the airline industry to reflect its determination that "maximum reliance on competitive market forces would best further efficiency, innovation, and low prices as well as variety [and] quality . . . of air transportation services."  *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378 (1992).

The Supreme Court has made clear that the ADA's express preemption provision "has a *broad* scope" and "an expansive sweep," and that the "ordinary meaning of these words . . . express a *broad* pre-emptive purpose."  *Morales*, 504 U.S. at 383–84 (emphasis added).  In *Morales*, for example, the Court defined the phrase "related to" under the ADA to mean "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into associate with or connection with."  *Morales*, 504 U.S. at 383; *see Air Evac EMS, Inc. v. Cheatham*, 910 F.3d 751, 762 (4th Cir. 2018) (a state law "relate[s] to a price, route, or service" of an airline "when it has 'a connection with, or reference to, airline prices, routes, or services . . . even without referencing them directly.'") (quoting *Northwest, Inc. v. Ginsberg*, 134 S. Ct. 1422, 1422 (2014)).  For example, the ADA's preemption provision displaces a "state's generally applicable consumer protection laws related to advertising" and "statutory causes of action related to fraudulent and deceptive practices . . . ."

14

*Cheatham*, 910 F.3d at 762; *see Andreadakis v. Ctr. for Disease Control & Prevention*, No. 3:22CV52 (DJN), 2022 WL 2674194, at *12 (E.D. Va. July 11, 2022) (dismissing invasion of privacy claim and other state law claims where the complained-of conduct of the airline related to its services).  The Fourth Circuit has construed "service" broadly to encompass matters incidental to and distinct from the actual transportation of passengers, such as an airline's boarding procedures.  *Smith v. Comair, Inc.,* 134 F.3d 254, 259 (4th Cir. 1998) (tort claims "based in part upon [an airline's] refusal of permission to board" are preempted because the claims "relate to" boarding procedures, "a service rendered by an airline").

Courts around the country have found that the ADA preempts state privacy claims like those Plaintiff asserts here.  For example, in *People ex rel. Harris v. Delta Air Lines, Inc.*, 247 Cal. App. 4th 884 (2016), the court held that the ADA preempted state claims based on Delta's alleged failure to bring its mobile application into compliance with California's Online Privacy Protection Act.  *Id.* at 900-906.  The court reasoned that, the "Fly Delta mobile application [was] selected and designed to facilitate access to the airline's services," and thus "is a marketing mechanism 'appropriate to the furnishing of air transportation services.'"  *Id.* at 901 (quoting *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228 (1995)).  Because plaintiff's claim related to the transportation services provided through Delta's mobile app, it was preempted.  *Id.* at 903 (citing *Morales*, 504 U.S. at 390).

In *In re Am. Airlines, Inc.*, the court held that state privacy claims were preempted where, as here, plaintiffs' information allegedly obtained or used without permission was collected "from customers when taking reservations or selling air transportation."  *In re Am. Airlines, Inc., Privacy Litig.*, 370 F. Supp. 2d 552, 561 (N.D. Tex. 2005).  Similarly, in *Kislov v. Am. Airlines, Inc.*, No. 17 C 9080, 2022 WL 846840 (N.D. Ill. Mar. 22, 2022), the court held that claims under the Illinois

15

Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.*, arising from American's alleged use of interactive voice software to create unauthorized "voiceprints," were preempted. *Id.* at *3. There, plaintiffs' biometrics were allegedly collected when they called American's customer service hotline, and the court held that "[c]ustomers anticipate that, when they purchase an airline ticket, carriers will provide customer assistance, just as customers expect 'baggage handling' or 'food and drink.'" *Id.* (quoting *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996)).[2]

As in these cases, the ADA preempts Plaintiff's MWESA and invasion of privacy claims. Plaintiff's claims are based on his communications on the Website. Compl. ¶ 31. Like the mobile application in *Delta*, the reservations plaintiffs made in *In re Am. Airlines*, and the customer service line in *Kislov*, the Website where Plaintiff claims his communications were acquired without his permission is a core part of JetBlue's "services." Customers can search for flight and travel information, make flight reservations, and buy tickets on the Website—indeed, it is this information that Plaintiff claims JetBlue acquired in violation of state law. Compl. ¶ 48; RJN, Ex. 5 (jetblue.com site). Enforcement of Plaintiff's MWESA and privacy claims would have a "significant impact upon the airline's ability to market its product through its [Website], and,

---

[2] Several other courts have held that the ADA preempts state claims based on privacy violations when, as here, the claims relate to the information airlines obtain in providing ticketing and reservation services. *See Pena v. Brit. Airways, PLC (UK)*, No. 18 CV 6278 (LDH) (RML), 2020 WL 3989055, at *1, 5 (E.D.N.Y. Mar. 30, 2020), *aff'd*, 849 F. App'x 13 (2d Cir. 2021) (claims under New York consumer protection law for failing to safeguard data in violation of airline privacy policy preempted because airline collected data when customers purchased tickets and made reservations on website and mobile application); *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (Ex), 2019 WL 1598761, at *1, 4–5 (C.D. Cal. Feb. 14, 2019), *aff'd*, 812 F. App'x 591 (9th Cir. 2020) (breach of contract claim for airline's alleged mishandling of passenger data collected through online "travel reservation, air transportation, and related services" preempted); *McGarry v. Delta Air Lines, Inc.*, No. CV 18-9827-MWF (Ex), 2019 WL 2558199, at *1–2, 5–6 (C.D. Cal. June 18, 2019), *aff'd*, 812 F. App'x 625 (9th Cir. 2020) (breach of contract claim for airline's failure to safeguard data collected when passengers made online reservations preempted); *Copeland v. Nw. Airlines Corp.*, No. 04-2156 M1/V, 2005 WL 2365255, at *1, 3 (W.D. Tenn. Feb. 28, 2005) (claim under Tennessee consumer protection law for disclosing passenger data from "Airline Passenger and Reservation database" preempted); *In re Nw. Airlines Priv. Litig.*, No. CIV.04-126(PAM/JSM), 2004 WL 1278459, at *1, 4 (D. Minn. June 6, 2004) (claim under Minnesota consumer protection law for disclosing "passenger name records," in violation of airline privacy policy preempted; records included names, flight numbers, and hotel reservations).

hence, a significant impact upon the fares they charge." *Delta*, 247 Cal. App. 4th at 903. "Congress surely intended to immunize airlines from a host of potentially-varying state laws and state-law causes of action that could effectively dictate how they manage personal information collected from customers to facilitate the ticketing and reservation functions that are integral to the operation of a commercial airline." *In re Am. Airlines, Inc.*, 370 F. Supp. 2d at 564.

### C.    Plaintiff Fails To Allege A Plausible Violation Of MWESA.

Plaintiff's barebones complaint is not sufficient to meet the requirements under Rule 12(b)(6) because:  (1) session replay software falls under the MWESA's "telephone exemption"; (2) Plaintiff fails to allege that the *contents* of his communications were intercepted, as that term is defined in the MWESA; and (3) Plaintiff fails to allege that there was any interception *contemporaneous with transmission* of his alleged communications.  *See* Md. Cts. & Jud. Proc. §§ 10-401, 10-402.  The Complaint should be dismissed on each of these independent grounds.

#### 1.    Session Replay Software Falls Under MWESA's "Telephone "Exemption".

Section 10-401(8) of MWESA defines an "electronic, mechanical, or other device" as "any device or electronic communication," *except* "[a]ny telephone or telegraph instrument, equipment or other facility for the transmission of electronic communications, or any component thereof . . . or furnished by the subscriber or user for connection to the facilities of the service and used in the ordinary course of business."  The "telephone exemption" to liability under the MWESA has two elements:  "(1) the equipment must be a telephone instrument, equipment or other facility for the transmission of electronic communications, or any component thereof; and (2) the equipment must be used in the ordinary course of the subscriber's or user's business."  *Schmerling v. Injured Workers' Ins. Fund*, 795 A.2d 715, 728 (Md. 2002) (quotation marks omitted).  In analyzing the telephone exemption, the *Schmerling* court stated that the "electronic communications" portion of

17

the exemption was added explicitly to address "changes in the telecommunication industry" such as "email." *Schmerling*, 795 A.2d at 724.

In *Schmerling*, the Maryland Court of Appeals considered whether a device that "directed incoming telephone calls to specific extensions," "recorded the voices of both the . . . employee and any party to the conversation," and allowed "supervisors . . . [to] review calls at their convenience and retrieve calls either at random or about which complaints or problems had been reported" fell into the telephone exemption under MWESA. *Schmerling*, 795 A.2d at 717. The court held that to be within the telephone exemption, "[t]he utility of the add-on equipment must have some relation to the enhancement of the communication system." *Id.* at 726. Accordingly, a phone extension fell within the telephone exemption because it added functionality to the phone system, just like a speaker phone attachment. *See id.* On the other hand, a device that "in no way increased the effectiveness of the telecommunications system . . . the *telecommunications equipment itself was not improved, enhanced, or furthered by the addition of the monitoring and recording devices*" was not within the exemption. *Id.* at 727 (emphasis in original).

Under *Schmerling*'s analysis, the session replay software used by JetBlue is the clearly within MWESA's telephone exemption. First, as Plaintiff concedes, the entire purpose of session replay software is to allow JetBlue to ensure the Website is functioning while users interact with the Website and optimize the Website from a consumer experience perspective. *See* Compl. ¶¶ 12, 13 ("information [collected by companies with session replay] is valuable to companies because they can use this data to improve customer experiences, refine their marketing strategies… In a consumer-driven world, the ability to capture […] customer data to shape products, solutions, and the buying experience is critically important to a business's success."). Without this technology, the Website functionality and user experience would certainly suffer, because glitches,

18

bugs, or malfunctioning elements of the Website would be less easy to ascertain. *See* RJN, Ex. 17 at 7 (providing data is collected to "maintain, improve, and optimize" the Website and other services). The "equipment [is] itself . . . improved, enhanced, [and] furthered by the addition of the monitoring and recording" session replay software. *Schmerling*, 795 A.2d at 727.

Second, the use of session replay software is in the course of JetBlue's ordinary course of business. JetBlue uses session replay software to improve customer experiences on its Website— its primary medium of connecting with customers for the purpose of selling tickets and allowing customers to manage their reservations. RJN, Ex. 5 (JetBlue Website). As such, improving the Website is one of the cornerstones of JetBlue's business. Therefore, the Complaint should be dismissed because session replay software is within MWESA's telephone exemption and cannot give rise to liability.

2.      Plaintiff Does Not Allege That JetBlue Captured The "Contents" Of His Communications.

Section 10-401(4) of the MWESA defines "contents" as "any information concerning the identity of the parties to the communication or the existence, substance, purport, or meaning of that communication." (Emphasis added). Similarly, the Federal Wiretap Act defines "contents" as including the "substance, purport, or meaning" of a communication. *See* 18 U.S.C. § 2510(8). Plaintiff alleges that JetBlue could have acquired his "mouse movements, clicks, keystrokes . . . URLs of web pages visited, and/or other electronic communications." Compl. ¶ 1. Plaintiff also alleges that "Fullstory . . . records all website visitor actions, including information typed by the website users while on the website. Such information can include names, emails, phone numbers, addresses, social security numbers, date[s] of birth, and more . . . ." Compl. ¶ 41.

Plaintiff's conclusory claim that his "electronic communications" were acquired is not entitled to a presumption of truth. *See, e.g.*, *Charter Oak Fire*, 2023 WL 170426, at *1-2 (holding

19

that legal conclusions are not entitled to the presumption of truth when ruling on a motion to dismiss pursuant to Rule 12(b)(6)).  Courts have uniformly held that the specific information Plaintiff claims JetBlue acquired is not actionable under wiretapping laws because it is not the "contents" of any communication as a matter of law.  *See, e.g.*, *Jacome*, 2021 WL 3087860, at \*4 ("Plaintiff alleges that her mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed by Plaintiff were intercepted by [defendant] . . . [b]ut . . . this is precisely the type of non-record information that courts consistently find do not constitute contents . . . because it does not convey the substance or meaning of any message." (internal quotations omitted; emphasis in original))[3]; *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021) (mouse clicks, mouse movements, scroll movements, keystrokes, search terms, pages and content viewed, and information inputted by plaintiff not "contents"); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (names, addresses, customer identities, or geolocation are not "contents"); *Goldstein v. Luxottica of Am., Inc.*, No. 21-CV-80546, 2021 WL 4093295 (S.D. Fla. Aug. 23, 2021) ("mouse clicks and movements, keystrokes, search terms, information inputted by Plaintiff, and pages and content viewed not 'contents' under the Federal Wiretap Act or any of its state analogs because it does not convey the substance or meaning of any message"), *report and recommendation adopted*, No. 21-CV-80546, 2021 WL 4125357 (S.D. Fla. Sept. 9, 2021); *Johnson v. Blue Nile, Inc.*, No. 20-CV-08183, 2021 WL 1312771, at \*2 (N.D. Cal. Apr. 8, 2021) (IP addresses, locations, browser types, and operating systems are not "contents")[4]; *Swiggum v. EAN Servs., LLC*, 2021 WL 3022735, at \*2 (finding that

---

[3] Florida's wiretapping act, the Florida Security of Communications Act, defines "contents" identically to the Federal Wiretap Act.

[4] California's wiretapping act, the California Invasion of Privacy Act, defines "contents" identically to the Federal Wiretap Act.  *See Graham*, 533 F. Supp. 3d at 833 ("The 'contents' of a communication under CIPA and the federal Wiretap Act are the same.").

20

mouse clicks and movements, keystrokes, search terms, information inputted by plaintiff, and pages and content viewed by plaintiff were not "contents"). Similarly, Plaintiff does not allege, and it is not plausible to infer, that he ever provided any identifying information to JetBlue that JetBlue unlawfully recorded with session replay software, since he does not claim to have entered into any transactions on the Website. Compl. ¶¶ 1, 45. He does not allege that JetBlue acquired any contents, and his claim should be dismissed.

3.  Plaintiff Has Not Alleged That His Communications Were Intercepted Contemporaneously With Transmission.

Section 10-402(a)(1) of MWESA makes it illegal to "[w]illfully *intercept*, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." (Emphasis added). The Federal Wiretap Act defines "intercept" identically. *See Martin*, 96 A.3d at 776 ("In light of the nearly identical definitions of 'intercept' and 'electronic communication' in both the Federal and Maryland Wiretap Acts . . . we shall join the federal courts in construing 'intercept' as requiring 'acquisition contemporaneous with transmission' of the messages." (citation omitted))*; see also* 18 U.S.C. § 2510(4). "Every circuit court to have considered the matter has held that an 'intercept' under the [Federal Wiretap Act] must occur *contemporaneously with transmission*." *Fraser v. Nationwide Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2003), *as amended* (Jan. 20, 2004) (emphasis added).

Plaintiff does not allege any facts demonstrating that his electronic communications were intercepted contemporaneously with transmission. Rather, Plaintiff merely alleges once, in a conclusory manner, that "Plaintiff's and Class members' electronic communications are intercepted contemporaneously with their transmission." Compl. ¶ 75. But just "[u]sing the word 'intercept' . . . is simply not enough without the addition of specific facts that make it plausible [JetBlue] is intercepting [Plaintiff's] data in transit." *Rodriguez v. Google LLC*, No. 20-CV-04688,

21

2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022).  This allegation is also implausible because Plaintiff claims that his communications were sent to a server controlled by a third party, "rather than the owner of the website where the code is installed," which indicates that Plaintiff's communications were acquired while in electronic storage, *i.e.*, that they were <u>not</u> intercepted. Compl. ¶ 24; *see Martin*, 96 A.3d at 776; *see also Lindsay-Stern v. Garamszegi*, No. SACV 14-01970-CJC(DFMx), 2016 WL 11745948, at *4 (C.D. Cal. Oct. 13, 2016) ("Caselaw generally stands for the proposition that once a [communication] has been received by the destination server, a communication becomes 'stored' and contemporaneous interception is no longer possible."). Federal courts frequently dismiss wiretapping claims—like Plaintiff's—where the element of interception is alleged in only conclusory terms.  *See Rosenow v. Facebook, Inc.*, No. 19-CV-1297, 2020 WL 1984062, at *7 (S.D. Cal. 2020) (holding the allegation that Yahoo violated the Wiretap Act by using an "algorithm to intercept and scan Plaintiff's incoming chat messages for content during transit and before placing them in electronic storage" conclusory and failed to state a claim); *Quigley v. Yelp, Inc.*, No. 17-CV-03771, 2018 WL 7204066, at *4 (N.D. Cal. 2018) (dismissing state and federal wiretapping claims where plaintiff alleged "vague references" to the use of "surveillance systems" and "surveillance personnel" but did not "allege with particularity how or when defendant became aware of his communications" allegedly acquired without permission).

     **D.**       **Plaintiff Fails To Plausibly Allege Intrusion Upon Seclusion.**

To state a claim for intrusion upon seclusion under Maryland law, a plaintiff must show that defendant "[1] intentionally [2] intruded upon his solicitude, seclusion or private affairs [3] in a manner that would be highly offensive to a reasonable person." *Marrs v. Marriott Corp.*, 830 F. Supp. 274, 283 (D. Md. 1992) (citing *Pemberton v. Bethlehem Steel Corp.*, 502 A.2d 1101 (Md. App. 1986)).  A claim for intrusion upon seclusion will not lie unless "the matter into which there was an intrusion is entitled to be private and is kept private by the plaintiff." *Whye*, 2013 WL

5375167, at *14 (citation omitted).  In other words, the plaintiff must have had a "legitimate expectation of privacy" in the matters intruded upon to state a claim.  *Id.* (quoting *Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F.3d 871, 877 (8th Cir. 2000)); *see also Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 697 (D. Md. 2017) (dismissing claim where the court found plaintiff failed to "allege[] sufficient facts to show that she had a reasonable expectation of privacy").  As to the third element, an "offensive intrusion" requires "either an unreasonable manner of intrusion, or intrusion for an unwarranted purpose."  *Whye*, 2013 WL 5375167, at *14 (citation and emphasis omitted) (holding that the conduct at issue was not an intrusion because it was not highly offensive to a reasonable person).  Where "the intrusion is conducted in a reasonable and non-obtrusive manner, it is not actionable."  *Id.* (citations omitted).

Plaintiff's intrusion claim must be dismissed because he has not alleged and cannot allege an expectation of privacy in the information he voluntarily relayed on JetBlue's website and any recording was not highly offensive to a reasonable person.  *First*, Plaintiff has not alleged that he had a reasonable expectation of privacy on the Website.  Plaintiff's conclusory allegation that he had "an objective, reasonable expectation of privacy in [his] website communications," Compl. ¶ 82, is not sufficient under *Iqbal* and *Twombly*.  *Whye*, 2013 WL 5375167, at *4 (holding that the plausibility standard "demands more than bald accusations").  Nor is it reasonable to infer that Plaintiff legitimately expected the information he voluntarily provided on JetBlue's commercial website would be private and not retained by JetBlue.[5]  Several courts have found that consumers

---

[5] The articles Plaintiff cites are not a substitute for his obligation to allege sufficient facts, accepted as true, to plausibly state a claim.  *Iqbal*, 556 U.S. at 678 ("To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." (emphasis added; quotation marks and citation omitted)).  *See also,* Compl. ¶¶ 16-21.  The viability of a complaint turns on the factual matter it alleges.  *Iqbal*, 556 U.S. at 678.  Since the articles averred to are not facts (and, in some cases, do not even purport to consider facts and instead address only theory), they may not sustain an otherwise-defective pleading.  *See id.*; *see also Waste Mgmt. of N.J., Inc. v. Mercer Cnty. Imp. Auth.*, No. A-2287-12T3, 2014 WL 6390571, at *6 (N.J. Super. Ct. App. Div. Nov. 18, 2014) ("Scholarly articles are a poor substitute for facts.").

have no reasonable expectation of privacy in communications voluntarily provided on a commercial website, like Plaintiff's website interactions here. *See Goldstein,* 559 F. Supp. 3d at 1321 ("[T]his mere tracking of Plaintiff's movements on Defendant's website is the cyber analog to record information Defendant could have obtained through a security camera at a brick-and-mortar store."); *see also Maryland v. Macon*, 472 U.S. 463, 469 (1985) (finding that there is no reasonable expectation of privacy in areas of a business where the public is invited to enter and transact business).

*Second*, Plaintiff has not alleged that any alleged intrusion was highly offensive. Although Plaintiff alleges that JetBlue can capture "intimately personal facts," Compl. ¶ 88, he does not allege that he provided any on the Website. The non-descript "mouse movements, clicks, scrolls, zooms, window resizes, keystrokes, text entry, and numerous other forms of a user's navigation and interaction through the website," Compl. ¶ 25, on a public-facing commercial air carrier's website are not the type of information that "is entitled to be [kept] private . . . by the plaintiff." *Whye*, 2013 WL 5375167, at *21 (rejecting an employee's assertion that he had a reasonable expectation of privacy "in conduct or information openly monitored"); *see also Rullan v. Goden*, No. 12-CV-2412, 2014 WL 4926192, at *11 n.8 (D. Md. Sept. 30, 2014) (finding no invasion of privacy where an employee's work email account was seized).

### E.      Plaintiff Consented To JetBlue's Recording.

Section 10-402(c)(3) of the MWESA provides an express exception to liability "where the person is a party to the communication and where all of the parties to the communication have given prior consent to the interception." Md. Cts. & Jud. Proc. § 10-402(c)(3). Similarly, courts have long held that an invasion of privacy claim does not exist for a party that consented to the conduct at issue. *See Washington v. Glob. Tel*Link Corp.*, No. 20-CV-01932, 2022 WL 3647782, at *4 (D. Md. Aug. 24, 2022). Plaintiff's claims fail here because—assuming his claims are true—

24

he affirmatively allowed JetBlue to use FullStory's software to record his interactions before he visited the Website.

Before anyone can use the JetBlue Website for any purpose, they are presented with a banner that:  (1) informs the visitor that "By clicking 'Accept all cookies', you consent to the use of all cookies, unless you have disabled them"; (2) gives the visitor the option to either "Accept all cookies" or "Manage cookies"; and (3) directs the visitor to JetBlue's Privacy Policy.  *See* RJN at Ex. 1.  A visitor—like Plaintiff—is *required* to "Accept all cookies" or "Manage cookies" before he or she can use the Website.  *Id*.  Assuming that JetBlue used FullStory session replay software to record Plaintiff's interactions, Plaintiff alleges no facts suggesting that occurred apart from his affirmative election to allow that cookie to be placed on his browser by either clicking "Accept all cookies," or electing to "Manage cookies," and not turn FullStory's functional cookie "off."  RJN, Exs. 1-3.  By failing to opt out, Plaintiff gave his express consent to JetBlue tracking his website interactions, including "mouse movements [and] clicks" and other information inputted on the Website, Compl. ¶¶ 1, 25, as disclosed in JetBlue's Privacy Policy linked in the banner that Plaintiff acknowledged.  *Id.*, Ex. 4, p. 2.

Under Maryland law, consent can be demonstrated where, in light of the totality of the circumstances, it is given freely and voluntarily.  *See Whack v. State*, 615 A.2d 1226, 1233 (Md. App. 1992).  Further, under Maryland law, consent may be implied where a party is aware of the recording and continues to communicate.  *See Boston v. State*, 175 A.3d 836, 843 (Md. App. 2017) ("At the inception of the call, the Detention Center warned Lee and his girlfriend that their call was being recorded and would be monitored.  They proceeded to talk, thereby consenting to their call being recorded."); *Briddell v. State*, No. 1220, 2016 WL 4698158, at *3 (Md. App. Sept. 7, 2016) ("[B]oth Briddell and his wife consented to being recorded when they continued their phone

conversation after having heard an automated message stating they would be recorded and monitored by the Wicomico Department of Corrections."). Courts have enforced assent to online terms when disclosure is provided in the form JetBlue provided in its Website banner. *See, e.g.,* *James v. Synovus Bank*, No. 19-CV-1137, 2020 WL 1479115, at *3 (D. Md. Mar. 26, 2020) (enforcing a clickwrap agreement to arbitrate and collecting cases).

Courts have found consent to allegedly unlawful eavesdropping where a plaintiff is presented with fulsome disclosures similar to those provided by JetBlue here before a communication is recorded. In *Jacome*, the Florida Superior Court held that a website visitor consented to the use of session replay to record his communications where "upon first accessing the Website, Plaintiff was presented with a banner" "that explicitly warned him that 'by continuing to use [the] [W]ebsite, [Plaintiff] acknowledge[s] the use of cookies'—the functional equivalent of calling a customer service line and hearing 'Your call is being recorded for quality assurance purposes.'" 2021 WL 3087860, at *7. "Given that Plaintiff had to affirmatively ex out of the cookie banner for it to no longer be visible on [JetBlue]'s Website, the Court is hard-pressed to find that Plaintiff was not aware that his interactions with the Website were being monitored." *Id.* As in *Jacome*, Plaintiff at least implicitly consented to the recording of his communications, and his consent precludes his claims as a matter of law.

## VI.   **CONCLUSION**

For the foregoing reasons, the Complaint should be dismissed with prejudice.

Dated this 17th day of April, 2023.

Respectfully submitted,

_____/s/ Tonya M. Esposito_____
Tonya M. Esposito, Esq. (MD No. 15338)
Greenberg Traurig, LLP
2101 L Street, NW
Washington, DC 20037

26

Telephone: 202-331-3111
Facsimile: 202-331-3101
Tonya.Esposito@gtlaw.com

Jacob D. Bundick, Esq. (admitted *pro hac vice*)
10845 Griffith Peak Drive, Suite 600
Las Vegas, Nevada 89135
(T): (702) 792-3772
(F): (702) 792-9002
bundickj@gtlaw.com

Rebekah S. Guyon, Esq. (admitted *pro hac vice*)
1840 Century Park East, Ste. 1900
Los Angeles, CA 90067-2121
Telephone: 310-586-7716
Rebekah.guyon@gtlaw.com

*Counsel for Defendant JetBlue Airways Corporation*

27

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of April, 2023, I electronically filed the foregoing Memorandum of Law in Support of the Motion to Dismiss with the Clerk of the Court using the CM/ECF System which will send notification of such filing to all counsel of record.

Respectfully submitted,

_/s/ Tonya M. Esposito_
Tonya M. Esposito, Esq. (MD No. 15338)
Greenberg Traurig, LLP
2101 L Street, NW
Washington, DC 20037
Telephone: 202-331-3111
Facsimile: 202-331-3101
Tonya.Esposito@gtlaw.com

_Counsel for Defendant JetBlue Airways Corporation_